**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

JOSHUA LEE HOSKINS,
#R-54570,

        **Plaintiff,**

    **vs.**                                            **Case No. 17-cv-1121-MJR**

WILLIAM SPILLER,
SARAH WOOLEY,
NATHAN WARD,
KENT BROCKMAN,
MICHAEL KEYS,
KIMBERLY BUTLER,
KELLY PIERCE,
REVA ENGELAGE,
AIMEE LANG,
CHAD FREIDRICH,
JOEL SLAVENS,
LEE GREGSON,
NICHOLE MARSHALL,
JOHN BALDWIN, and
YVETTE BAKER,

        **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

**REAGAN, Chief Judge:**

    Plaintiff Joshua Lee Hoskins, an inmate currently housed at Pontiac Correctional Center ("Pontiac"), filed this action pursuant to 42 U.S.C. § 1983. Plaintiff's allegations pertain to alleged constitutional violations that occurred at Menard Correctional Center ("Menard) (from February 2016 through January 2017) and at Stateville Correctional Center ("Stateville") (from January 2017 through February 2017). This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

        (a) **Screening** – The court shall review, before docketing, if feasible or, in any

event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. This practice is encouraged. The Seventh Circuit Court of Appeals has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir.

2017). *See also Wheeler v. Talbot*, -- F. App'x --, 2017 WL 2417889 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, improperly joined parties and/or claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

## The Complaint

**Overview**

Plaintiff assaulted an officer in 2013 and has a history of filing grievances against and/or complaining about officials at Menard. (Doc. 1, pp. 26-28). In particular, Plaintiff has grieved and/or complained about Menard's medical staff on numerous occasions. *Id.* As a result, Plaintiff claims he has been subjected to retaliation. (Doc. 1, pp. 26-46). In particular, Plaintiff claims that officials retaliated against him by issuing an unjustified or false disciplinary ticket (Doc. 1, pp. 42-43), dated February 17, 2016 ("Disputed Ticket"). After a hearing, Plaintiff was adjudicated guilty and subjected to disciplinary action that included 1 year in segregation – from February 17, 2016 through February 17, 2017. (Doc. 1, pp. 44-45). Between February 17, 2016 and January 3, 2017, Plaintiff was in segregation at Menard. (Doc. 1, p. 39). On January 4, 2017, Plaintiff was transferred to Stateville and completed his term of disciplinary segregation at that institution.

Plaintiff claims that Menard officials have violated his constitutional rights in various ways, including by ensuring that Plaintiff was charged and convicted of unjustified disciplinary infractions and by denying him medical care during his time in segregation at Menard (from February 17, 2016 through January 3, 2017). He also alleges that, after being transferred to Stateville, he was subjected to unconstitutional conditions of confinement and denied the right to freely practice his religion.

**Claims Pertaining to Menard**

### *Disputed Ticket and Disciplinary Hearing*

According to the Disputed Ticket, Plaintiff was involved in a physical altercation on February 12, 2016. (Doc. 1, pp. 26-28, 42-45). Plaintiff was charged with violation of Illinois Department of Corrections ("IDOC") rule 205-Gang or Unauthorized Organization Activity and IDOC rule 301-Fighting. The Disputed Ticket indicates that a copy was served on Plaintiff on February 17, 2017, but Plaintiff refused to sign. (Doc. 1, p. 42).

A hearing was held on February 23, 2016. (Doc. 1, pp. 44-45). According to the record of proceedings, no witnesses were requested and Plaintiff pled guilty. *Id*. The hearing committee (Lieutenant Brokman and Officer Keys) found Plaintiff guilty of both offenses. *Id.* Plaintiff was ordered to segregation for 1 year, demoted to "C" grade for 1 year, placed on commissary restriction for 1 year, and subjected to restricted contact visits for 6 months. *Id.*

The Disputed Ticket was signed by Officer Spiller. (Doc. 1, pp. 26-28, 42-45). Prior to issuing the Disputed Ticket, Officer Spiller indicated he did not like Plaintiff because he assaulted an officer in 2013 and because he had filed numerous grievances and complaints against officials at Menard. (Doc. 1, p. 26). Officer Spiller told Plaintiff he was going to file a false disciplinary report against Plaintiff as an act of retaliation for this conduct. *Id.*

Plaintiff claims that Officer Bump (not a Defendant in the instant case) helped Officer Spiller issue the Disputed Ticket at the request of Correctional Medical Technician ("CMT") Lang.[1] (Doc. 1, pp. 26, 28, 32). Plaintiff also claims that Officers Ward and Wooley helped

---

[1] Plaintiff also claims that "Stephanie" and "others" asked Spiller to issue the Disputed Ticket. (Doc. 1, pp. 26, 28). The individual described as "Stephanie," however, is not a defendant in this action and it is unclear who the term "others" is intended to describe.

Spiller issue the Disputed Ticket by reviewing it to be sure it sounded believable. (Doc. 1, pp. 26, 32-34). According to the Complaint, at various points, Officers Spiller, Bump, Ward, and Wooley, as well as CMT Lang confirmed that they coordinated efforts to issue the Disputed Ticket. (Doc. 1, pp. 26-27, 32-34). These individuals allegedly admitted that they helped Spiller issue the Disputed Ticket as an act of retaliation for Plaintiff's prior assault on an officer and history of submitting grievances and/or complaining about officials at Menard. (Doc. 1, pp. 26. 32-34).

Officer Slavens' signature on the Disputed Ticket indicates that Plaintiff was served with a copy on February 17, 2016, but refused to sign. (Doc. 1, pp. 30-31, 42). Plaintiff claims that he was not served with the Disputed Ticket on February 17, 2016 and that this record is false. (Doc. 1, pp. 30-31). According to the Complaint, Slavens confirmed that he falsified the service record at the direction of Officers Spiller, Pierce, Bump, Wooley, Ward, and Keys; Lieutenant Brokman; and Warden Butler. (Doc. 1, pp. 30-31). Allegedly, these individuals worked together to falsify the service record to ensure that Plaintiff was convicted of the false charges contained in the Disputed Ticket. (Doc. 1, pp. 30-31, 34-35). These individuals were allegedly motivated by a desire to retaliate against Plaintiff for past grievances and his prior assault on an officer. (Doc. 1, pp. 26-35).

Plaintiff also alleges Officer Baker falsely stated that, prior to the hearing on the Disputed Ticket, Officer Baker: (1) conducted an investigation into the charges and (2) interviewed Plaintiff to allow him to prepare a defense by giving him a statement and a list of witnesses. (Doc. 1, p. 35). Plaintiff claims that this conduct resulted in the adjustment committee finding Plaintiff guilty. *Id.* Plaintiff does not allege that Officer Baker's allegedly false statements were motivated by retaliatory animus.

Plaintiff claims that prior to the hearing, Officer Spiller spoke with Officer Keys and Lieutenant Brookman (the individuals who oversaw Plaintiff's hearing), as well as Warden Butler. *Id.* Spiller told these individuals to "make sure" Plaintiff is "found guilty of the false disciplinary report (ticket) on all false charges." (Doc. 1, pp. 26-27; *see also* Doc. 1, p. 28 (claiming that Warden Butler, Lieutenant Brookman, and "other staffs" ensured that Plaintiff was found guilty of all charges)). Officer Ward told Plaintiff she asked her "buddy," Lieutenant Brokman, to find him guilty on the Ticket. (Doc. 1, p. 32). Lieutenant Brokman told Plaintiff that he knew the ticket was false. (Doc. 1, p. 33). Nonetheless, Lieutenant Brokman and Officer Keys found Plaintiff guilty on the "bogish" ticket because of his prior assault on an officer and because he had filed numerous grievances against officials at Menard. *Id.*

Plaintiff claims that, at the hearing, he told Lieutenant Brokman and Officer Keys he had not received a copy of the Disputed Ticket and asked that his hearing be continued, so he could call witnesses in his defense. *Id.* Despite Plaintiff's request, the hearing proceeded. *Id.* Plaintiff claims that he did not plead guilty to the offenses charged and that Lieutenant Brokman and Officer Keys falsely stated that he pled guilty. *Id.* Finally, Plaintiff claims that the charges in the Disputed Ticket were "unsubstantiated" and that Warden Butler, Lieutenant Brokman, and Officer Keys knew the charges were unsubstantiated. *Id.*

### *Denial of Medical Care*

According to the Complaint, while in segregation at Menard, Plaintiff submitted sick-call slips regarding daily "pains throughout [his] body," "facial swelling," "injuries from bumping [his] face to the walls," "muscle cramps," and "chest pains." (Doc. 1, pp. 31, 33-35). Plaintiff claims that various officials deliberately ignored his requests for medical care and that the denial of care was retaliatory. (Doc. 1, pp. 31-36). Specifically, Plaintiff claims that Nurse Gregson

and CMTs Lang, Engelage, Marshall, and Freidrich, on various occasions: (1) confirmed that he or she was aware of Plaintiff's alleged medical needs; (2) confirmed that Plaintiff's sick-call requests were being intentionally ignored and/or destroyed; and (3) indicated that he or she had no intention of responding to Plaintiff's medical requests or providing medication for Plaintiff's alleged pain. (Doc. 1, p. 31, Nurse Gregson; Doc. 1, p. 33, CMT Lang; Doc. 1, p. 34, CMTs Engelage and Freidrich; Doc. 1, p. 35, CMT Marshall). Plaintiff claims that Officers Spiller, Wooley, Ward, and Bump directed medical staff to ignore his medical complaints while he was in segregation. (Doc. 1, pp. 31-32).

The Complaint also suggests that these individuals acted together to deny Plaintiff medical care. The Court specifically notes the following allegations:

- Doc. 1, pp. 31-32, On June 8, 2016, Spiller told Plaintiff Spiller, Wooley, Ward, Bump, and Gree or Ghee "told their buddies who were healthcare unit medical staffs to destroy any sick call slips that [Plaintiff] sent to the healthcare unit complaining about pains and other conditions of [Plaintiff's] body while being housed in segregation and to make sure that [Plaintiff] was not provided with no medical treatment and necessities and told all the North Two Cell House security staffs to do the same."

- Doc. 1, p. 34, On July 16, 2016, CMT Engelage told Plaintiff to stop submitting sick-call requests, that he would not receive treatment, and that the medical and security staff were treating him this way because of his past grievances and an officer assault.

- On September 26, 2016, CMT Freidrich told Plaintiff that he should know by now "that us medical staffs don't give a fuck about you nor the conditions of your body so stop sending us all those sick call slips. We have told all of our co-workers in the healthcare unit not to give you no pain relief or shit. Security staffs asked us to mistreat you since you was sent to Menard (IDOC) for pushing a officer years back. I'm also not giving you medical treatment & necessities due to the fact you written grievances on my co-worker Aimee Lang and told mental health professional Ms. Difranklin a while back that you wasn't receiving your psychotropic medications from the nurses when you was in the West Cell House." (Doc. 1, p. 34).

- On October 24, 2016, CMT Marshall told Plaintiff she had been destroying all of his sick-call slips and that Marshall, Lang, Engelage, Freidrich, and "others" had discussed the issue and intended to make sure that Plaintiff did not receive medical care. (Doc. 1, p. 35).

- Nurse Gregson stating, "We aint gonna do shit for you to limit your pain and muscle issues." (Doc. 1, p. 31).

- CMT Lang stating, "We don't give a fuck about your pain sufferings, I'm gonna make sure you are never given medical treatment." (Doc. 1, p. 33).

According to the Complaint, the denial of medical care was retaliation for Plaintiff's past assault on an officer and for his history of filing grievances and/or complaints. In connection with this claim, the Court specifically notes the following allegations:

- On June 8, 2016, Spiller told Plaintiff that, in addition to issuing the false ticket, Spiller, Wooley, Ward, Bump and Ghee or Gree told medical staff to ignore Plaintiff's requests for medical and psychiatric treatment while he was in segregation. (Doc. 1, p. 32).

- On June 7, 2016 and on other occasions, Nurse Gregson told Plaintiff his sick-call requests were being ignored "due to [him] grieving medical staffs." (Doc. 1, p. 31).

- On July 10, 2016 and on other occasions, after telling Plaintiff to stop submitting sick-call requests and that he would not be receiving treatment, CMT Lang said "I bet you want to write another grievance on me." (Doc. 1, p. 33). She also indicated Plaintiff was being denied medical care "due to [him] writing grievances on her reporting nurses conduct to mental health of not waking [him] up to serve [him] prescribed medications, grieving other staffs." (Doc. 1, p. 34).

- On July 16, 2016 and on other occasions, CMT Engelage told Plaintiff "she was gonna make sure that [he] was never issued medications for pains nor another medical treatment since [he] had put grievances against Menard (IDOC) medical staffs." (Doc. 1, p. 34).

- On September 26, 2016, CMT Freidrich allegedly told Plaintiff "I'm also not giving you medical treatment & necessities due to the fact you written grievances on my co-worker Aimee Lang." (Doc. 1, p. 34).

- On October 24, 2016 and other occasions, CMT Marshall allegedly told Plaintiff that his sick-call slips and medication requests were being ignored (with the exception of Plaintiff's psychotropic medication) because of his "history putting grievances and oral complaints to mental health staffs about nurses not serving [him his] psychotropic medications." (Doc. 1, p. 35).

### Conditions of Confinement While In Segregation

Plaintiff brings a litany of complaints about his conditions of confinement while in segregation. (Doc. 1, pp. 36-39). The Court specifically notes the following alleged conditions: (1) the sewer pipes in Plaintiff's cell were broken, causing feces and urine to flood his cell when he flushed his toilet; (2) feces and urine covered the floor of his cell on a regular basis; (3) unsanitary conditions in Plaintiff's cell attracted insects and rodents; (4) Plaintiff's cell was covered in mold and mildew; (5) the water in Plaintiff's cell was discolored and rusty; (6) Plaintiff was not given materials to clean the unsanitary conditions in his cell; (7) Plaintiff's cell was so small he regularly injured himself while attempting to move and was unable to exercise; and (8) Plaintiff was denied sanitary clothing and bedding.

According to the Complaint, Counselors Vasquez and Nippie (not defendants in this action) toured the cell house galleries, including Plaintiff's segregation cell. (Doc. 1, p. 38). Plaintiff claims that he told the counselors about the complained of conditions and that the complained of conditions were negatively impacting his physical and mental health. *Id.* Allegedly, the counselors told Plaintiff to quit complaining. *Id.* They indicated that they had no intention of addressing his complaints and that all of his complaints (both in person and via the grievance process) would be ignored, would not be reported, and/or would be destroyed. (Doc. 1, pp. 37-38).

### Access to the Courts

Plaintiff generally alleges that his access to legal materials was more restrictive in segregation than it would have been had he remained in the general population. (Doc. 1, pp. 37-38). He also claims that his legal materials were confiscated and destroyed. *Id.* As a result, Plaintiff claims he was unable to put on a defense in unspecified legal and criminal matters. *Id.*

This claim is not associated with any particular individual.

### *Free Exercise of Religion*

Plaintiff claims he was unable to fast in connection with Ramadan and was unable to participate in the Ramadan feast. (Doc. 1, p. 37). He also complains that, while in segregation, he was unable to comply with a religious diet. (Doc. 1, p. 38). This claim is not associated with any particular individual.

### *Denying or Mishandling Grievances*

Plaintiff claims that Baldwin, IDOC's director, wrongfully denied his grievance pertaining to the Disputed Ticket. (Doc. 1, p. 36).

## Claims Pertaining to Stateville

On January 4, 2017, Plaintiff was transferred to Stateville. (Doc. 1, p. 39). At Stateville, Plaintiff remained in segregation through February of 2017. (Doc. 1, pp. 39-40). According to the Complaint, during this time, Plaintiff was subjected to unconstitutional conditions of confinement and was prevented from practicing his Muslim religion. *Id.* Plaintiff claims that but for the Disputed Ticket he would not have been subjected to these alleged constitutional violations. *Id.* The claims are not associated with any particular individual.

With respect to his conditions of confinement, Plaintiff alleges the following: (1) the lights stayed on 24 hours a day, causing headaches and blurred vision; (2) the cell was infested with insects; (3) birds flew through the cell, dropping feces in the cell's chuckhole; (4) the ventilation system was filthy, causing Plaintiff to itch and wheeze; (5) Plaintiff had no materials to clean his cell; and (6) Plaintiff was served small meals, causing him to lose weight. (Doc. 1, pp. 39-40).

With respect to the ability to practice his religious beliefs, Plaintiff alleges as follows: (1)

Plaintiff was unable to pray five times a day, as is required by his religion; (2) Plaintiff could not purchase a watch from the commissary and, as a result, did not know when he needed to pray; (3) Plaintiff was not allowed to participate in weekly religious services or in Ramadan; (4) Plaintiff could not maintain a religious diet; and (5) Plaintiff could not otherwise abide by the tenants of his religion due to the unsanitary conditions in his cell. (Doc. 1, pp. 39-40).

## Designation of Counts

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

## Designation of Counts

**Count 1:** Officers Spiller, Ward, Wooley, Pierce, Keys, and Slavens; CMT Lang; Lieutenant Brokman; and Warden Butler, individually and/or in conspiracy, retaliated against Plaintiff by way of a false disciplinary ticket and conviction, after Plaintiff filed grievances against Menard officials, in violation of the First Amendment.

**Count 2:** Officers Spiller, Ward, Wooley, Pierce, Keys, Baker, and Slavens; CMT Lang; Lieutenant Brokman; and Warden Butler, individually and/or in conspiracy, denied Plaintiff substantive and procedural due process in connection with his conviction on a false disciplinary ticket, in violation of the Fourteenth Amendment.

**Count 3:** Officers Spiller, Wooley, and Ward; Nurse Gregson; and CMTs Lang, Engelage, Marshall, and Freidrich, individually and/or in conspiracy, exhibited deliberate indifference to Plaintiff's serious medical needs, when Plaintiff was in disciplinary segregation at Menard, in violation of the Eighth Amendment.

**Count 4:** Officers Spiller, Wooley, and Ward; Nurse Gregson; and CMTs Lang, Engelage, Marshall, and Freidrich, individually and/or in conspiracy, retaliated against Plaintiff by way of withholding medical treatment, including pain medication, when Plaintiff was in disciplinary segregation

at Menard, after Plaintiff filed grievances against Menard officials, in violation of the First Amendment.

**Count 5:**    Director Baldwin violated Plaintiff's rights by denying his grievance pertaining to a false disciplinary ticket and conviction.

**Count 6:**    Defendants exhibited deliberate indifference to Plaintiff's conditions of confinement, in violation of the Eighth Amendment.

**Count 7:**    Defendants violated Plaintiff's right of access to the Courts, when Plaintiff was in disciplinary segregation at Menard, in violation of the Fourteenth Amendment.

**Count 8:**    Defendants violated Plaintiff's right to freely exercise his religion, when Plaintiff was in disciplinary segregation at Menard, in violation of the First Amendment.

**Count 9:**    Unknown Party subjected Plaintiff to unconstitutional conditions of confinement when Plaintiff was in disciplinary segregation at Stateville.

**Count 10:**    Unknown Party violated Plaintiff's First Amendment right to freely exercise his religion when Plaintiff was in disciplinary segregation at Stateville.

At the outset, the Court notes that Plaintiff directs allegations against certain individuals who are not identified as defendants in his case caption of list of defendants. Specifically, the body of the Complaint brings allegations against the following individuals: (1) Shaun Gree or Ghee (illegible); (2) an individual identified as "Stephanie;" (3) Lieutenant Mr. Mayers; (4) Sara Johnson; (5) Officer Bump; (6) Counselor Vasquez; (7) Counselor Nippie; and (8) an unidentified mental health professional that failed to provide Plaintiff with mental health services. Because these individuals are not listed in the caption, the Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

That being said, Plaintiff has brought two distinct sets of claims against officials at two

different institutions – Counts 1 through 8, involving officials at Menard, and Counts 9 through 10, involving unknown officials at Stateville. These claims are not transactionally related and do not belong together in a single action.[2] Therefore, the Court will exercise its discretion and sever the claims pertaining to Stateville (Counts 9 and 10) into a separate case. *George*, 507 F.3d at 607. The Court also notes that the claims pertaining to Stateville are not associated with any particular party. The Clerk of the Court cannot open a new action in CM-ECF without naming a defendant. Accordingly, as an administrative matter, the severed case will be opened in CM-ECF as against "Unknown Party." Plaintiff may be given leave to amend in the severed case so that he may properly name the relevant defendants.

## Severance

Now, consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claims related to Plaintiff's time in disciplinary segregation at Stateville (Counts 9 and 10) into a separate action. This separate action will have a newly assigned case number and shall be assessed a filing fee. The severed case shall undergo preliminary review pursuant to § 1915A after the new case number and judge assignments have been made.

Counts 1 through 8 shall not be severed, as they appear, at least tenuously, to be properly joined under the Federal Rules of Civil Procedure. These claims receive preliminary review below.

---

[2] When Plaintiff was transferred to Stateville, he spent approximately one month in segregation pursuant to the term of segregation imposed by officials at Menard. This fact does not work to unite all of Plaintiff's claims. Plaintiff's claims pertaining to Stateville involve distinct constitutional violations, occurring at a different prison. Although Plaintiff has not identified a defendant in connection with his Stateville claims, it is evident that the Stateville claims will different defendants.

**<u>Merits Review Under § 1915(A) – Counts 1 -8</u>**

**Count 1**

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Although only notice pleading is required,[3] it is helpful to understand that to prevail on a First Amendment retaliation claim a plaintiff must show: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir.2012) (internal citations omitted).

Plaintiff alleges his prior grievances and complaints about officials at Menard *and* a single incident of assaulting an officer were motivating factors in the alleged retaliatory conduct. A prisoner's right to free speech encompasses several different types of "protected activities," including filing a grievance. *Turley v. Rednour*, 555 Fed.Appx. 606, 609 (7th Cir.2014). Thus, a government official may not retaliate against someone for filing a grievance. *See also Lagerstrom v. Kingston,* 463 F.3d 621, 625 (7th Cir. 2006); *Black v. Lane,* 22 F.3d 1395, 1402 (7th Cir. 1994) (falsifying a disciplinary charge may give rise to a claim under § 1983 *if* the motive for the fabrication was to retaliate for the exercise of a constitutional right). However, assaulting an officer is not a protected First Amendment activity and cannot be the basis for a retaliation claim. *See, e.g., Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) ("[A] physical

---

[3] With regard to retaliation claims, the Seventh Circuit has "rejected any requirement that [at the pleading stage] an inmate allege a chronology of events in order to state a claim of retaliation because such a requirement is contrary to the federal rule of notice pleading." *McElroy v. Lopac,* 403 F.3d 855, 858 (7th Cir. 2005).

assault is not by any stretch of the imagination expressive conduct protected by the First Amendment."). Accordingly, Count 1 considers only Plaintiff's claims pertaining to his prior grievances and complaints about officials at Menard.

According to the Complaint, after Plaintiff filed numerous grievances and complaints against officials at Menard, particularly complaints regarding Menard's medical staff, Spiller issued a false or unjustified disciplinary ticket and Plaintiff was found guilty of the charged offenses. Plaintiff further alleges that the Defendants named in connection with Count 1 communicated with each other and agreed to assist Spiller in issuing the false disciplinary ticket and/or ensuring that Plaintiff was convicted of the false disciplinary ticket. As a result, Plaintiff was ordered to segregation for 1 year, demoted to "C" grade for 1 year, placed on commissary restriction for 1 year, and subjected to restricted contact visits for 6 months. These alleged consequences can be said to have a chilling effect.

Thus, Count 1 states a colorable claim against the specified Defendants – individually and as co-conspirators. Count 1 shall proceed.

**Count 2**

The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property. *See Marion v. Radtke*, 641 F.3d 874, 875 (7th Cir. 2011). Procedural due process protections require that the inmate receive "advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decision maker, and a written explanation supported by at least 'some evidence' in the record, for any disciplinary action taken." *Langstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006) (citations omitted). Further, an extreme "frame-up," where no subsequent procedural fairness could uncover the

truth, may constitute a substantive due process violation triggering the due process protections prescribed in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *See Langerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006). *See also Black v. Lane*, 22 F.3d 1395, 1402-03 (7th Cir. 1994) ("Issuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right."). However, in order for the actions of a prison official to interfere with a plaintiff's substantive due process rights, "the consequences [must be] sufficiently severe." *Lagerstrom*, 463 F.3d at 625.

As to whether Plaintiff suffered a constitutional deprivation, the Court focuses on Plaintiff's placement in disciplinary segregation.[4] "[A]n inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest arises only when the plaintiff's confinement in segregation "impose[s] an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at 743 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In order to determine if a plaintiff endured such a hardship, the court must look to "the combined import of the duration of the segregative confinement and the conditions endured." *Hardaway*, 734 F.3d at 743 (quoting *Marion*, 559 F.3d at 697–98).

Here, Plaintiff was in segregation for a year. A term of segregation this lengthy warrants inquiry into the conditions of that confinement. *See Marion*, 559 F.3d at 698-99 (holding that a term of 240 days in segregation was lengthy enough to require scrutiny into the actual conditions

---

[4] Punishments such as demotion in grade, commissary restriction, or transfer to another facility do not amount to a constitutional deprivation. *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (prisoners do not have a protectable liberty interest in demotion to C-grade and loss of commissary privileges); *Id.* at 760 (prisoner has no liberty interest in remaining in general population or avoiding transfer to another prison).

of segregation).[5]  Further, the Seventh Circuit has indicated that whether a term of this length is a type of "atypical, significant hardship," for purposes of a denial of due process claim, cannot be decided at the pleading stage.  *Marion*, 559 F.3d at 697–98.  Accordingly, without delving into the conditions of segregation discussed in the Complaint (Doc. 1, pp. 36-39), the Court finds that Plaintiff has alleged a deprivation sufficient to survive preliminary review.

Assuming Plaintiff had a protectable liberty interest with respect to being placed in segregation for a year, he was entitled to due process before being punished.  Here, Plaintiff has alleged that his disciplinary hearing was constitutionally deficient because he was falsely listed as having pleaded guilty, did not receive the requisite notice, was not permitted to call witnesses, did not have impartial decision-makers, and the charges were unsubstantiated.  Additionally, Plaintiff has alleged that the specified defendants were involved in a conspiracy to frame and convict him of the false charges.

At this early stage in the litigation, Plaintiff has stated colorable substantive and procedural due process claims against the specified Defendants – individually and as co-conspirators.  Count 2 shall proceed.

---

[5] In *Marion*, the Seventh Circuit noted other circuits have held that "periods of confinement that approach or exceed one year may trigger a cognizable liberty interest without any reference to conditions."  *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 699 n.4 (7th Cir. 2009).  *See Iqbal v. Hasty*, 490 F.3d 143, 161 (2d Cir. 2007), cert. granted sub nom.  *Ashcroft v. Iqbal*, 554 U.S. 902 (2008) (explaining that a segregated confinement of 305 days or more necessarily triggers due process protections, and segregation lasting 101 to 305 days may trigger due process protections, depending on the conditions of segregation); *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) (reversing dismissal of claim involving 750 days' segregation, stating that when a "prisoner is subjected to a lengthy period of segregation, the duration of that confinement may itself be atypical and significant"); *Williams v. Fountain*, 77 F.3d 372, 374 (11th Cir. 1996) (holding that one year of solitary confinement was sufficient to state a claim); *but see Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months' segregation, alone, does not implicate a liberty interest).

**Count 3**

Prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs. *Rasho v. Elyea*, -- F.3d --, 2017 WL 892500 (7th Cir. March 7, 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016)). To state a claim, a plaintiff must demonstrate that he suffered from a serious medical condition (objective standard) and that the prison official responded with deliberate indifference (subjective standard). *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (citing *Farmer*, 511 U.S. at 834; *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)).

For screening purposes, Plaintiff has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). A serious medical condition need not be life-threatening, *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997); it is enough that the "injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir.1996). Not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Gutierrez*, 111 F.3d at 1372. However, sufficiently serious pain can constitute a serious medical condition. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

According to the Complaint, while in segregation, Plaintiff submitted sick-call slips regarding daily "pains throughout [his] body," "facial swelling," "injuries from bumping [his] face to the walls," "muscle cramps," and "chest pains." (Doc. 1, pp. 31, 33-35). These allegations of pain and suffering are sufficient, at the pleading stage, to suggest a serious medical

condition.  *See Gutierrez*, 111 F.3d at 1372 n.7 (given liberal pleading standards for *pro se* complaints, "the 'seriousness' determination will often be ill-suited for resolution at the pleading stage").

The allegations also support a claim of deliberate indifference against Officers Spiller, Wooley, and Ward; Nurse Gregson; and CMTs Lang, Engelage, Marshall, and Freidrich.  As to the medical officials (Nurse Gregson and CMTs Lang, Engelage, Marshall, and Freidrich) Plaintiff claims that each individual (1) confirmed that he or she was aware of Plaintiff's alleged medical needs; (2) confirmed that Plaintiff's sick-call requests were being intentionally ignored and/or destroyed; and (3) indicated that he or she had no intention of responding to Plaintiff's medical requests or providing medication for Plaintiff's alleged pain.  ((Doc. 1, p. 31, Nurse Gregson); (Doc. 1, p. 33, CMT Lang); (Doc. 1, p. 34, CMTs Engelage and Freidrich); (Doc. 1, p. 35, CMT Marshall).   As to the officers (Spiller, Wooley, and Ward,), Plaintiff claims they directed medical staff to ignore Plaintiff's medical complaints while he was in segregation. (Doc. 1, pp. 31-32).

The Complaint also suggests that these individuals acted together to deny Plaintiff medical care. Plaintiff claims that, on June 8, 2016, Spiller told him Spiller, Wooley, and Ward "told their buddies who were healthcare unit medical staffs to destroy any sick call slips that [Plaintiff] sent to the healthcare unit complaining about pains and other conditions of [Plaintiff's] body while being housed in segregation and to make sure that [Plaintiff] was not provided with no medical treatment and necessities and told all the North Two Cell House security staffs to do the same."   (Doc. 1, pp. 31-32).  Plaintiff also claims that Nurse Gregson and CMTs Lang, Engelage, Marshall, and Freidrich made comments suggesting that the individuals named in

connection with this claim were working together to deny Plaintiff medical treatment.  (Doc. 1, pp. 31, 33-35).

Plaintiff has stated a plausible deliberate indifference claim against the specified Defendants – individually and as co-conspirators.  Count 3 shall proceed.

## Count 4 – Retaliation

Plaintiff alleges that the denial of medical care at issue in Count 3 was retaliation for his past grievances.  (Doc. 1, pp. 31, 33-35).  Additionally, according to the Complaint, Spiller told Plaintiff that, in addition to issuing the false ticket, Spiller, Wooley, and Ward told medical staff to ignore his requests for medical treatment while he was in segregation.  (Doc. 1, p. 31).

With respect to the first element, as previously noted, filing a non-frivolous grievance is a constitutionally protected activity sufficient to support a retaliation claim.  *Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004).  With respect to the second element, the Seventh Circuit has held that denial of medical treatment is a deprivation likely to dissuade a reasonable person from engaging in future First Amendment activity.  *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).

At this early stage of the litigation, Plaintiff's allegations suffice to state a claim of retaliation against the specified Defendants – individually and as co-conspirators.  Count 4 shall proceed.

## *Count* 5

Generally, the denial of a grievance – standing alone – is not enough to violate the United States Constitution. *See, e.g., George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.");

*Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). *See also Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428-29 (7th Cir. 2017) ("inaction following receipt of a complaint about someone else's conduct is not a source of liability"). Nonetheless, a grievance official may be subject to liability for deliberate indifference if he or she "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996).

Here, the claims pertaining to Baldwin, IDOC's director, suggest nothing more than the denial of a grievance by an individual who was not involved in the underlying constitutional violation. There is no indication that Baldwin is subject to liability under the standard articulated in *Perez* or related authority. As such, Plaintiff's claims pertaining to Baldwin fall short of stating a constitutional claim. Count 5 shall be dismissed without prejudice for failure to state a claim.

### Counts 6 and 7

Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Fed. R. Civ. P. 8(a)(2). Counts 7 and 8 are not associated with any particular defendant. As such, to the extent that Plaintiff intended to assert independent access to the courts and free exercise of religion claims (as opposed to simply describing the conditions of disciplinary segregation), these claims are subject to dismissal. Counts 7 and 8 shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

*Count 8*

The conditions Plaintiff was allegedly subjected to while in segregation at Menard, when considered in combination, may support a conditions of confinement claim.[6]  However, the only individuals associated with this claim – Counselors Nippie and Vasquez – are not identified as defendants in the case caption and cannot be considered defendants in this case.

As a result, Count 8 is not associated with any particular defendant and, as with Counts 7 and 8, is subject to dismissal.  Count 8 shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.  As this is the only claim directed against Baldwin, he shall be dismissed from the action without prejudice.

## Pending Motions

Plaintiff has filed a motion asking the Court to mail him a complete copy of his original complaint.  (Doc. 4).  The Motion is **GRANTED**.  As a one-time courtesy, the Clerk is **DIRECTED** to send Plaintiff a copy of the Complaint.  As a general rule, the District Clerk will mail paper copies of any document only after receiving prepayment of the required fee (i.e., $.50 per page).  All further requests for documents should be made in writing to the Clerk of Court by referring to the case number and the document number and submitting the required prepayment.

## Disposition

### Severance

**IT IS HEREBY ORDERED** that **COUNTS 9** and **10 are SEVERED** into a new case

---

[6] Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation and physical safety.  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir.1992).  However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets."  *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

against **UNKNOWN PARTY**.

     **IT IS FURTHER ORDERED** that the *only claims remaining in this action, are COUNTS 1 through 8.*

## Newly Severed Case

     The claims in the newly severed case (Counts 9 and 10) shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1); and
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 2).

     Plaintiff **will be responsible for an additional $350 filing fee** in the newly severed case.[7] No service shall be ordered in the severed case until the § 1915A review is completed.

     This newly severed cases shall be captioned: **JOSHUA LEE HOSKINS**, Plaintiff vs. **UNKNOWN PARTY**, Defendant.

## Merits Review of Counts 1 -8 (The Only Claims Remaining in This Case)

     **IT IS HEREBY ORDERED** that **COUNT 1** shall receive further review as to **SPILLER, WARD, WOOLEY, PIERCE, KEYS, SLAVENS, LANG, BROKMAN,** and **BUTLER.**

     **IT IS FURTHER ORDERED** that **COUNT 2** shall receive further review as to **SPILLER, WARD, WOOLEY, PIERCE, KEYS, BAKER, SLAVENS, LANG, BROKMAN**, and **BUTLER.**

---

[7] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

**IT IS FURTHER ORDERED** that **COUNT 3** shall receive further review as to **SPILLER, WOOLEY, WARD, GREGSON, LANG, ENGELAGE, MARSHALL,** and **FREIDRICH.**

**IT IS FURTHER ORDERED** that **COUNT 4** shall receive further review as to **SPILLER, WOOLEY, WARD, GREGSON, LANG, ENGELAGE, MARSHALL,** and **FREIDRICH.**

**IT IS FURTHER ORDERED** that **COUNTS 5, 6, 7,** and **8** are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

As **COUNT 5** is the only claim directed against **BALDWIN** he is **DISMISSED** without prejudice from the Complaint and <u>the Clerk of the Court is **DIRECTED** to terminate **BALDWIN** as a party in CM/ECF.</u>

With respect to **COUNTS 1, 2, 3,** and **4,** the Clerk of Court shall prepare for **SPILLER, WOOLEY, WARD, BROCKMAN, KEYS, BUTLER, PIERCE, ENGELAGE, LANG, FREIDRICH, SLAVENS, GREGSON, MARSHALL,** and **BAKER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendants fail to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendants, and the Court will require Defendants to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if

not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 2, 2018**

<u>s/ MICHAEL J. REAGAN</u>
**CHIEF JUDGE**
**United States District Judge**